# ird District Court of Appeal

**State of Florida**

Opinion filed, August 6, 2014
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-2667
Lower Tribunal No. 10-41868
_____


**Barry Yampol,**
Appellant,

vs.

**Turnberry Isle South Condominium Association, Inc., etc.,**
Appellee.


An appeal from a non-final order from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Legon Fodiman and Todd R. Legon and Jeffrey A. Sudduth; Hicks, Porter, Ebenfeld & Stein and Erik P. Bartenhagen and Emily Elisco and Cindy L. Ebenfeld (Hollywood), for appellant.

Blaxberg, Grayson & Kukoff and I. Barry Blaxberg and Ian J. Kukoff, for appellee.


Before LAGOA, SALTER and EMAS, JJ.

SALTER, J.

Barry Yampol, a residential condominium owner, appeals an order directing him to "promptly and permanently remove all of his improvements from the parapet walls" of the roof of Turnberry Isle South. We reverse the order insofar as it purports to grant permanent relief not sought in the appellee/condominium association's pleadings, and we affirm the order in all other respects.

Facts and Procedural History

The Turnberry Isle South Condominium Association, Inc. (plaintiff and counterdefendant below), and Mr. Yampol have sporadically sparred over Mr. Yampol's rights to build and maintain various improvements on the rooftop above his penthouse condominium unit at Turnberry Isle South in Aventura. The precipitating cause of a similar dispute in 1994 and the most recent dispute (which commenced in 2010) was the Association's need to replace the high-rise building's roof. The roofing contractors needed access to the structural walls and parapets in order to perform the work, seal the roof, paint the adjoining exterior walls, and move materials and debris between roof and ground. A 1994 lawsuit on these issues was settled the following year when the parties signed a written agreement addressing the timing, extent, and cost for the roof repairs and the dismantling and replacement of Mr. Yampol's rooftop improvements.

In 2010, the Association and Mr. Yampol again disagreed on the roof repairs and various aspects of the removal and replacement of Mr. Yampol's rooftop

2

improvements. In its amended complaint, the Association sought declaratory and injunctive relief to the effect that Mr. Yampol was obligated to remove his improvements from his roof at his own expense, pay for replacing the roof in his "exclusive roof area," and be responsible for any reinstallation of his improvements "if such reinstallation is permissible" under the then-current building codes. The Association also sought enforcement of an unrecorded, pre-turnover "Right to Use Agreement" between the developer and the original owner of Mr. Yampol's unit, the imposition of a lien against Mr. Yampol's unit for failing to pay his portion of the roof repair costs, damages for Mr. Yampol's alleged interference with the Association's contractual duties to other unit owners in the building, and damages for his alleged breach of the 1995 settlement agreement.

Mr. Yampol raised numerous affirmative defenses and filed a counterclaim against the Association, alleging, among other things, that the Association "implemented a policy of selective and discriminatory enforcement against Yampol, which policies and actions have been orchestrated and implemented over the years by various Board members, several of whom have criminal convictions, in order to pursue their own interests and self-dealing, and in order to run roughshod over the 280 owners of the building, many of whom [are] widows and widowers (or who only live in the building certain times of the year) and who do

3

not have the means or ability to change their improper behavior and unlawful conduct." In essence, Mr. Yampol alleged that the Association breached the "Right to Use Agreement," the Declaration of Condominium, and the 1995 settlement agreement. He alleged that it would cost between $500,000.00 and $700,000.00 to remove and replace his rooftop improvements, "assuming that it is even possible to restore [the improvements] to their present condition."

After two days of evidentiary hearings, on September 20, 2013, the trial court entered two non-final orders on the claims for injunctive relief—one order submitted by Mr. Yampol, and one by the Association.[1] The Association's form of order required Mr. Yampol to remove his improvements from the rooftop to the extent necessary to permit the Association and its contractors to maintain and repair the roof and parapet walls. However, contrary to the narrow relief originally sought by the Association and contrary to its attorney's representations during the hearings, the order also directed that Mr. Yampol would be required to permanently remove all of his improvements from the parapet walls bordering his

[1] The parties sought a relinquishment of jurisdiction to clarify various conflicts between the two orders. A motions panel of this Court granted relinquishment for that limited purpose. The trial court entered an order in November 2013, also appealed by Mr. Yampol, Case No. 3D13-3195. Concluding that the later order exceeded the specifically stated matters identified in the relinquishment, see Fla. R. App. P. 9.600, this Court ultimately denied further relinquishment and directed that our review would be confined to the existing record and the two non-final orders in this case, No. 3D13-2667. Yampol v. Turnbery Isle South Condo. Ass'n Inc., 137 So. 3d 1124 (Fla. 3d DCA 2014). The trial court then clarified that the intended order was the longer version submitted by the Association.

4

designated rooftop area and his other improvements stacked in the Association-controlled roof area while the work was underway. The Association's position in the pleadings and during the hearings was that, subject only to compliance with applicable building codes, Mr. Yampol would be permitted to restore his improvements to their original state following the roofing, painting and waterproofing work at the top of the building. Mr. Yampol's appeal followed.

Analysis

The Association's pleadings and its attorneys' representations during the hearings, acknowledged as well by the trial court, indicated that Mr. Yampol would be permitted to replace his rooftop improvements, including "the wood surfaces mounted on his parapet walls, which were part of the original finish on his previously existing improvements," at the conclusion of the Association's repairs and painting of the roof and parapet walls. After all the evidence had been received, however, the trial court made its own determination that Mr. Yampol was required to remove all wood decking and planters from the parapet walls "in perpetuity." The trial court expressed the view that the parapet walls were "common elements, or limited common elements that should not have fixtures attached to them."

Following a review of the complete record, we conclude that Mr. Yampol's due process argument is well taken. The permanent relief granted by the trial

5

court, and the legal basis for it, were introduced after the evidence had been taken and without notice and an opportunity to be heard. Jade Winds Ass'n, Inc. v. Citibank, N.A., 63 So. 3d 819, 822 (Fla. 3d DCA 2011).

Further, the trial court's jurisdiction could only be exercised within the scope of the pleadings in the case. BAC Home Loans Servicing, Inc. v. De Headley, 130 So. 3d 703, 705 (Fla. 3d DCA 2013); Mullne v. Sea-Tech Constr. Inc., 84 So. 3d 1247, 1249 (Fla. 4th DCA 2012). The Association did not plead a claim for the permanent removal of Mr. Yampol's improvements, it conceded that the improvements could be replaced (to the extent allowed by applicable building codes), and it may not now "mend its hold" to claim that it is entitled to the permanent removal of those improvements on the unpled grounds relied upon by the trial court. Salcedo v. Asociacion Cubana, Inc., 368 So. 2d 1337 (Fla. 3d DCA 1979).

The Association claims that it is "disingenuous" for Mr. Yampol to claim reliance on his ability to reinstall his decking and other rooftop improvements. The Association asserts that Mr. Yampol conceded that he would be unable to replace the improvements in his own cross-motion for an injunction (as part of his allegations regarding irreparable injury). But the concession that some of the "large trees and improvements" cannot be replaced under the current building code does not address which improvements cannot be reinstalled. The parties did not

plead, try, or brief the legal basis relied upon by the trial court in barring the reinstallation of Mr. Yampol's parapet wall improvements "in perpetuity," a <u>sua sponte</u> conclusion that the parapet walls were "common elements, or limited common elements that should not have fixtures attached to them"—irrespective of any building code analysis.

<u>Conclusion</u>

We affirm the Association's form of order entered September 20, 2013, with the exception of those findings and conclusions referring to the permanent removal of Mr. Yampol's rooftop improvements installed in or abutting the parapet walls, which we reverse and remand. We express no opinion as to whether the applicable building codes, condominium documents, "Right of Use Agreement," and course of dealings between and among the Association, Mr. Yampol, and the owners of other rooftop improvements at Turnberry Isle South, will allow the restoration of Mr. Yampol's improvements installed in or abutting the parapet walls, in the event that the parties amend their pleadings on remand to assert such claims and are afforded an appropriate hearing on such issues.

Affirmed in part, reversed in part, and remanded for further proceedings.